It pleases the Court, my name is Paul Turner with the Federal Public Defender Office in Las Vegas, Nevada, here this morning to represent Gregory Dicus. When you interpret the Interstate Detainer Act, it's clear from the Supreme Court's analysis of the act in the Karchman case in 1985 that you look to the act's plain language. That's where you start, that's where you end. In this case, if you look to the plain language of sections 5d and g, Roman 5d and g, it's clear that Mr. Dicus was convicted of a number of charges that were not part of the original detainer and were not part of the same transaction as the original detainer. So it happens that those charges, two in particular, the most important charges in this case, the two sexual The statute makes clear, in the words in the statute, that the receiving state only has jurisdiction to decide the same, the detainer charges and the same transaction charges. And the word jurisdiction is in 5g. There's no other, the jurisdiction is retained by the sending state otherwise. May I ask you a question, Mr. Turner, about what the Nevada Supreme Court did? As I understand it, the Nevada Supreme Court said that this claim was, in effect, procedurally defaulted because in the argument made on appeal to the Nevada Supreme Court, the argument was not developed and no supporting authority was submitted. So why was that decision, contrary to clearly established federal law, something that we can review even? It was my understanding, Your Honor, that the court went on to rule on the merits of the claim. And obviously, I know of the reference you're making. I'm also not aware of any, if you raise a claim on appeal, you can certainly lose by not arguing your claim. But I'm not aware that that's a procedural default of your claim. It's obviously not a real good idea. And for a... Well, the Nevada Supreme Court said it was unreviewable for that reason. So you say we just ignore that? No, Your Honor, I don't think you can ignore that. But my reading of the opinion was that the court went on to decide the issue on the merits. Obviously, it ruled against my client and found that it was not fundamentally unfair, the application of the law here. I know the reference, Your Honor, and I'm certainly not saying you should ignore it. It doesn't make that whole... I realize you can't rewrite state law, but it makes no sense at all that when an issue is raised on appeal, the mere fact that it's not particularly argued very artfully, that that would somehow eliminate the issue, that it just doesn't make sense. I guess that's the only response I've gotten. I don't know. I mean, we do it. I mean, if somebody raises an issue but doesn't argue it, it's just waived. Well, if it's raised in a brief, I think it... Yeah, it's raised in a brief, but not argued. It's just gone. Well, if that's the case. But I don't have any better answer to that, and I'm sorry I don't this morning, Your Honor. Okay, thank you. The transaction argument, of course, the word same transaction, in this case, under Nevada law, you cannot be convicted of lewdness if it's... Excuse me. In order to prove sexual assault, you have to... The burden is on the state to prove that the lewdness is not incidental. Let me back up. In order to prove lewdness, you have to prove that it's not incidental to a sexual assault. These are mutually exclusive crimes in Nevada. They have to be separate transactions, the sexual assault and the lewdness. Separate crimes or separate transactions? Well, they're separate crimes, but they're also... I would say they're separate transactions, too, because they can't be the same event. I interpret transaction as an act, as a single act or single event, single incident. I suppose there's an ongoing course of conduct. Your Honor... On day one, there's lewdness. On day two, there's a sexual assault. I think that that is a good question. I think that if the words were series of transactions or series of acts, as it is in Rule 8 of the Federal Criminal Rules, the word transaction is used in that rule, and it says act or transaction, and then it says series of acts or transaction. I think if the Interstate Detainer Act had series of transactions in it, that would be a way of interpreting it. Here, it just says transaction. And since they're separate, since you have the burden of showing they're not incidental, to the sexual assault, I would think that that means they have to be separate, and then they're separate transactions. Therefore, under our theory of the case, there's no jurisdiction in the court to try Mr. Dicus for those additional charges. They should be dismissed now. The other charges we're not saying are improper. He's been convicted of them. Those sentences would stand. So the relief we're requesting on this particular issue is just dismissal of the additional charges. Obviously, the two most important ones are on top of the list. The other additional charges are different people, and we would certainly say that different people are different transactions. They're different alleged victims. Even if it's the same family? Yes, Sean, I think you have to look, under our theory of this at least, you have to look to the event itself, I mean, the specific event. I mean, I think that's generally the way you do it in criminal law. You look to the specific facts of the specific allegation as to the specific crime, as opposed to some sort of broader scenario. And I don't think that the Interstate Detainer Act is designed to, obviously designed to help, or at least attempt to help, get charges resolved that would linger for years and years and years. And the purpose of the act, of course, is to, I think, get litigants to try to get their charges resolved. It benefits the prisoner, obviously, and it benefits the court system to have old charges resolved. The kind of thing that happened here to Mr. Dicus is totally counter to that philosophy. What this says is that if you follow the rules and you come back to resolve your charges, you're going to get clobbered, basically, unless you happen to do something that makes the prosecutor feel good about it. In this case, Mr. Dicus did the reverse. He started to plead guilty and backed off. It's not good. Obviously, that's not a good thing to do, but it happens. Here, he got clobbered because of that, and our argument would be that this is a disincentive, great disincentive to anyone to want to come back and resolve charges when this kind of thing happens, and it's wrong. It violates the Detainer Act, and it should be corrected. The court also ordered some additional briefing on ground, what is ground three that we brought, namely on vindictiveness in basically bullying a witness from testifying against Mr. Dicus. The threat was that she'd be prosecuted for perjury. I know the state has suggested that that doesn't constitute vindictiveness, but I would say that it certainly does. Well, would that be prosecutorial misconduct if the government bullied a witness out of testifying favorably to the defendant? Yes. I mean, the theory is prosecutorial misconduct. Absolutely. Absolutely, Your Honor, and it is, I believe, and it was in this case, I believe. That's your right. What do we do about it? What we'd like to do about it is because the affidavit we submitted was rejected by the district court. We would like the case sent back to the district court for an evidentiary hearing so that that affidavit can be tested. The credibility of Mrs. Dentler can be tested in court, and we've submitted that's the right thing to do, and we would welcome that, and that's what we're asking for, Your Honor. I see that I'm down. I'm sorry. Yeah, Mr. Turner, on that point, all of this was known. I mean, the affidavit didn't exist, but the difficulty that Christy, I think is her name, had in deciding whether to testify or not was known at the trial court level, and no record was developed in the trial court in Nevada. So why was the district court wrong in saying that the record in the federal district court should not be expanded? Obviously, at the trial court, there wasn't anything they could do, Your Honor, because she read a scripted Fifth Amendment statement. Well, they had developed a record in the trial court. But they couldn't obviously get her to say anything. I mean, she just refused to speak, basically, and cut things off with that Fifth Amendment statement. I mean, there's nothing they could do about that at that point. They moved for a mistrial, but obviously — Well, and in connection with moving for the mistrial, could have developed the record. Well, maybe there was something they could have done with some other potential witness, but I don't know, could have been Mr. Brooks, possibly, or somebody like that. But the key witness refused to speak. She is — she's willing to speak now, and that — on appeal, I might add, there was nothing they could do to add to the record there. And then that really cut things off, because in Nevada, when you've already brought up your issue on direct appeal, you normally get a law-of-the-case defense raised on post-conviction. I want to correct something. I think I strenuously indicated that you couldn't raise the affidavit in post-conviction in state court until an evidentiary hearing. In preparing for argument, I think maybe I overstated that. I've never seen an affidavit presented with a state petition, and I've filed some myself, and I've also read a few. I think maybe you could do that. But the real point here is that evidentiary hearing is the right time to do it, and also, he couldn't do anything anyway, because he was locked out by the direct appeal record. He couldn't go beyond that. Thank you. Thank you. Mr. Gover. Good morning. May it please the Court, my name is Tom Gover. I'm with the Nevada Office of the Attorney General, and I represent the respondents in this case. As a respondent in a habeas matter, I always like to fall back on the standard in habeas cases, and particularly in this case, the unreasonable application of a clearly established federal law. And we don't have that in this case. Related to the alleged IAD violation, there is no, actually I cited to the United States Supreme Court decision in Methony, where they refused to grant cert and to decide whether or not an IAD violation without anything else is cognizable in habeas corpus. The majority of the circuits, along with the Nevada Supreme Court, find that a simple violation of the IAD without anything else is not cognizable in habeas, and that it cannot be addressed unless there's a fundamental defect that we're looking at. That is also my understanding of the position of the Ninth Circuit Court, in that the Ninth Circuit Court will look as to whether or not a fundamental defect is involved, or a technical defect is involved, and decide if habeas corpus is an appropriate remedy. In the Ninth Circuit, you have the Cody-Tingatelli line of cases that liken an Article IV-C violation to a speedy trial, right? And say if there's a violation of Article IV-C, that there is relief in habeas corpus. And on the other side of the spectrum, you have the Article IV-E anti-shuttling types of violations, where the Ninth Circuit has found that this isn't dealing with a fundamental right, and therefore habeas corpus is not available. As to Article V-D violations, the Ninth Circuit has not addressed whether or not that we're dealing with a fundamental defect or a technical defect. The Nevada Supreme Court, in affirming the decision of the trial court and its findings, the conclusions of the law, relied on authority from the Third Circuit. And the Third Circuit, I believe I briefed, discusses directly on point the question of Article V-D violations, and whether or not they're fundamental or not. I think their arguments that they raise are persuasive in this case, and for the Ninth Circuit to follow, in that Article V-D has no specific dismissal remedy, as opposed to the speedy trial types of violations, where specifically in the IED it talks about a violation of the 120-day right to the trial, or 180-day right, depending on if you're dealing with what type of petition or what type of detainer, that there isn't a specific dismissal remedy in those types of cases. But in V-D there isn't a specific dismissal remedy. Also, the Third Circuit cannot find that the Article V-D deals with any specific fundamental right akin to a speedy trial right, or something that you would find in the Constitution. And there's no prejudice in these types of cases. The stated prejudice, I believe, of Mr. Dicus was that in not having all of the counts listed out in this information, maybe he would not have waived and come out to Nevada. It's not really much of a prejudice. If he wasn't going to waive, there's ways for the state to compel his attendance in the state of Nevada. And so the prejudice really doesn't go to any fundamental right. Now, I believe the appellant concedes this and is trying to frame the issue as a violation of V-D results in a lack of jurisdiction for the receiving state. I think they want to get away from the technical results of a V-D violation and say, well, now subject matter jurisdiction is divested. The Third Circuit dealt with that issue directly in the McCandless case that I've cited in the briefs. And basically, McCandless relies on the receiving state's jurisdiction. And I think that's the appropriate analysis. When we look at the IED, the IED, its purpose is not to convey jurisdiction to the sending states or the receiving states or whatever. These states already have jurisdiction over the person. What Nevada didn't have in this particular case is custody of Mr. Dicus. And so the IED is to coordinate the custody of these various jurisdictions who have subject matter jurisdiction, personal jurisdiction. I mean, the allegations in the complaint are that Mr. Dicus was in Nevada at the time that he did these things, so the personal jurisdiction analysis really doesn't even play into things here. And so, you know, to state that a violation of the IED divests a receiving state of jurisdiction, that's not based on any clearly established federal law either. And another point that I would raise on that is that argument is too broad. For us to say that a violation of a non-fundamental right or non-fundamental right in the IED divests a court of jurisdiction, well, that's saying everyone, every single violation would divest the receiving state of jurisdiction. And that would go contrary to this Court's decisions regarding the anti-shuttling types of cases, that those two technically are violations, and because the receiving state didn't, you know, abide by the absolute letter of the law here, that now they're divested of subject matter jurisdiction. And so I feel that jurisdictional defect argument is also flawed. The appellants rely on Article 5G for this jurisdictional argument, and I think they're overstating what Article 5G in the Interstate Agreement of Detainers is trying to do. It's basically stating that there's a residual jurisdiction. When the sending state sends a prisoner off to a receiving state, that if there's an escape, that they may prosecute the prisoner for that escape. It's not an exclusive statement of jurisdiction by any stretch of the imagination. It doesn't state that the state where the escape occurred, that that state couldn't prosecute the person for escape. And I just believe it's too overbroad of a reading of the statement or Article 5G. Before your time runs out, I'd like to ask you about the Dentler affidavit. Okay. What opportunity did the petitioner have to improve the record in the state court by getting that affidavit into evidence before the state court in some fashion? Okay. I believe the appellant is correct regarding his opportunity on direct appeal. On direct appeal, basically that is a review of the record. Ms. Dentler got on the stand. She took her Fifth Amendment right. The court tried to get it out of her, basically queried her. You know, you've been in the court while these two attorneys are going back and forth about what went on in the hallway, what occurred, and she took the fit. Well, she exercised her Fifth Amendment right. The petitioner made a proffer. What opportunity on collateral review did the petitioner have an opportunity to put that affidavit before the court to get an evidence you're hearing? The first opportunity is on collateral appeal, they could have actually articulated this as a claim. If you look at the petition for writ of habeas corpus, they don't even assert prosecutorial misconduct related to Christy Dentler's affidavit as a claim. Well, but the point is she didn't get to testify. Well, she didn't testify, and that's correct. But if you want an opportunity to raise your claim and to bring this affidavit to light, to bring the true, what is the true reason why Christy Dentler didn't get on the stand? That's what this affidavit is all about subjectively. I mean, you know, why didn't she testify? They could have reduced that to an affidavit in the collateral petition. They could have raised that as a claim, but they didn't even bother to raise it as a claim. That's their first opportunity that they could have asserted this in the state court, but they didn't. Did you offer her to testify at the evidentiary hearing before the district court? Before the district court on writ of appeal or on collateral appeal? Yes, habeas. There wasn't an evidentiary hearing on habeas, and the point being that they didn't. Did they request an evidentiary hearing on habeas? They did request an evidentiary hearing, but not on this particular claim. This particular claim was not asserted on collateral appeal. If you look at the petition, it starts at Exeter Record 433. They only raised two claims. The first claim was adequate notice of a grand jury proceeding claim, and the second claim was the IED violation, and then they requested an evidentiary hearing to discuss these two claims. Well, they can't come to the court now and complain about the inability to put on evidence and have an evidentiary hearing about their inability to put Christy Dentler on the stand when they never asserted that as a claim on collateral appeal and didn't ask for an evidentiary hearing regarding that issue on collateral appeal in the state courts. And so, yes, they had an opportunity. They didn't raise the issue. You know, my time has run out. The last thing I would basically say is it took six years for them to put together this affidavit, and so when we're talking about their due diligence in discovering this claim, you know, and then liberally quote this affidavit, which is an improper expansion of the record, and then question the district court for not accepting it as an improper expansion, I believe, doesn't comply with the law. Thank you. Mr. Turner. Your Honor, on the interstate detainer, on procedural default, I would simply say to the court that it's a manifest injustice to allow that to stand, and I think that's an exception to default. The Nevada Supreme Court articulated the claim, and then you're absolutely correct, refused to go further. Jurisdiction is a fundamental starting point of every case in America. It's not a trivial technical thing. It is the fundamental start of a case, and there was no right to have this trial, and the court should have done something about it, and this court should do something about it. On the Dentler affidavit, whatever the petition may have said, you have a right under Nevada law to amend your petition. When you get an evidentiary hearing, you can add affidavits, and the Federal, essentially identical to Federal Rule 15, comes in under Nevada law, and you could amend the petition. He was summarily denied everything, cut off with nothing, no capability of doing anything further. And, by the way, there's nothing wrong with what he did in the Federal court. The State responded to it by saying it was exactly procedurally correct, and they said it should be handled on the merits. It was the district judge who changed that picture. Thank you, Your Honor. Okay. Thank you, Mr. Turner. Thank you, counsel. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Selna